UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No.: 1:26-cv-3242

LI XIANG JIANG a/k/a CHANG CHAUN
LEE,

        Petitioner,

v.

KENNETH GENALO, in his official
capacity as Director, ICE New York
Field Office; and US DEPARTMENT
OF HOMELAND SECURITY (DHS);

        Respondents.

_____/

**PETITION FOR WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C §2241**

Petitioner LI XIANG JIANG a/k/a CHANG CHAUN LEE ("MR. JIANG" or "Petitioner")

petitions this Honorable Court for a Writ of Habeas Corpus to remedy Petitioner's unlawful

detention without bail by Respondents, and states as follows:

**INTRODUCTION**

1. Petitioner, Mr. Li Xiang Jiang, seeks an Order Granting him an immediate reasonable bond

   and/or Bond Hearing, on the grounds that his current detention which has lasted sine last

   December violates his Right to Due Process, constitutes an illegal punitive detention due

   to his medical condition and is cruel and unusual to the extent that it prevents him from

   seeing his wife who currently has stage four cancer.

2. Petitioner's current detention is also per se unreasonable, irrational and an abuse of the

   Federal Government's discretion because there is no basis for his continued detention under

1

the current circumstances and his detention violates clearly established law and current DOJ policies applied to dozens of similarly situated detainees that have been released.

3.  Attached are the Petitioner's multiple requests to ICE, since December, asking for a reasonable bond.

4.  Petitioner is a thirty (30) year Staten Island Resident who has been a tax paying, law abiding and well-respected member of his community for decades and whose US Citizen children and relatives and public servants have vouched for his substantial community ties. The record overwhelmingly demonstrates that Mr. Jiang is neither a flight risk nor a danger to the community, and that his continued detention is unjustified.

5.  The attached exhibits include overwhelming documentation that not only is Mr. Jiang not a risk of flight or danger to the community, but he was only detained after he voluntarily visited ICE in attempts to adjust his status.

6.  He is a law-abiding, long-time resident with no criminal history.

7.  He is a devoted husband and father, and the primary caregiver to his wife, who is currently battling Stage IV metastatic colon cancer, creating urgent humanitarian grounds for release.

8.  While detained, Mr. Jiang's mental and physical health have significantly declined. He suffers from severe anxiety, insomnia, low energy, and fatigue, conditions he never experienced prior to detention.

9.  Petitioner's access to appropriate medical care is uncertain, and the conditions at MDC Brooklyn, including overcrowding, limited food, frequent violence, and restricted phone access, exacerbate his physical and mental distress.

10. These conditions, combined with his role as primary caregiver to his terminally ill wife, constitute compelling humanitarian factors warranting immediate release.

11. Mr. Jiang has strong and well-documented ties to the United States, including U.S. citizen family members (including his own two children), stable residence, home ownership, and a long-standing employment history.

## STATEMENT OF FACTS

12. He was detained only after voluntarily appearing before ICE in good faith to regularize his status, underscoring his willingness to comply with all immigration requirements.

13. Mr. Jiang's current circumstances stem, in part, from his good-faith reliance on prior counsel while attempting to legalize his status, further demonstrating that he has acted transparently and without any intent to evade authorities.

14. He remains fully willing to comply with any conditions of release, including supervision, reporting requirements, or electronic monitoring.

15. No neutral decisionmaker – whether a federal judge or immigration judge ("IJ") – has conducted a hearing to determine whether this incarceration is warranted based on danger or flight risk.

16. Petitioner's prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment.

17.  Given these factors, continued detention serves no legitimate purpose, and equity, due process, and humanitarian considerations strongly favor his immediate release.

18. Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus, determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with

appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

19. Alternatively, Petitioner requests that the Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedules a hearing before an IJ where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the IJ shall order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

## **JURISDICTION**

20. Petitioner is detained in custody of Respondents at the MDC Brooklyn, where he has been held since December 19, 2025. Prior to that, he was detained at Delaney Hall Detention Facility from December 16, 2025 to December 19, 2025.

21. This action arises under the Due Process Clause of the Fifth Amendment of the U.S. Constitution. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 2241 (habeas corpus); U.S. Const. art. I, § 2; (Suspension Clause); and 5 U.S.C. § 702 (Administrative Procedure Act). This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

22. Congress has preserved judicial review of challenges to immigration detention. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 839-841 (2018) (holding that 8 U.S.C. §§ 1226(e), 1252(b)(9) do not bar review of challenges to prolonged immigration detention); see also

id. at 876 (Breyer, J., dissenting). ("8 U.S.C. § 1252(b)(9) . . . by its terms applies only with respect to review of an order of removal") (internal quotation marks and brackets omitted).

## VENUE

23. Venue is proper in this District because this is the district in which Petitioner is confined. See *Doe v. Garland*, 109 F.4th 1188, 1197-99 (9th Cir. 2024).

## REQUIREMENTS OF 28 U.S.C. § 2243

24. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If the Court issues an OSC, it must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." Id. (emphasis added).

25. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ affords "a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963) (emphasis added); *see also Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (explaining that habeas statute requires expeditious determination of petitions).

## LEGAL BACKGROUND

26. "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection

5

against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or capricious").

27. Due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. Id.; *Demore*, 538 U.S. at 528.

28. Due process requires that the government provide bond hearings to noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law." *Jennings*, 138 S. Ct. at 862 (Breyer, J., dissenting) (internal quotation marks omitted). While the Supreme Court upheld the mandatory detention of a noncitizen under Section 1226(c) in Demore, it did so based on the petitioner's concession of deportability and the Court's understanding at the time that such detentions are typically "brief." *Demore*, 538 U.S. at 522 n.6, 528. Where a noncitizen has been detained for a prolonged period or is pursuing a substantial defense to removal or claim to relief, due process requires an individualized determination that such a significant deprivation of liberty is warranted. Id. at 532 (Kennedy, J., concurring) ("[I]ndividualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified"); see also *Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (holding that detention beyond the "initial commitment" requires

6

additional safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) (holding that "lesser safeguards may be appropriate" for "short- term confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (holding that, in the Eighth Amendment context, "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards"); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (holding that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under section 1226(c)) (internal quotation marks omitted).

29. *See e.g. Shaughnessy* v. *United States ex rel. Mezei,* 345 U. S. 206-in which an alien was indefinitely detained as he attempted to reenter the country-does not support the Government's argument that alien status itself can justify indefinite detention. Once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent. Nor do cases holding that, because Congress has plenary power to create immigration law, the Judicial Branch must defer to Executive and Legislative Branch decision making in that area help the Government, because that power is subject to constitutional limits. Finally, the aliens' liberty interest is not diminished by their lack of a legal right to live at large.

30. As the U.S. Supreme Court has held:

> "A statute permitting indefinite detention would raise serious constitutional questions. Freedom from imprisonment lies at the heart of the liberty protected by the Due Process Clause. Government detention violates the Clause unless it is ordered in a criminal proceeding with adequate procedural safeguards or a special justification outweighs the individual's liberty interest. The instant proceedings are

civil and assumed to be nonpunitive, and the Government proffers no sufficiently strong justification for indefinite civil detention under this statute. The first justification-preventing flight-is weak or nonexistent where removal seems a remote possibility. Preventive detention based on the second justification-protecting the community-has been upheld only when limited to specially dangerous individuals and subject to strong procedural protections. When preventive detention is potentially indefinite, this dangerousness rationale must also be accompanied by some other special circumstance, such as mental illness, that helps to create the danger. The civil confinement here is potentially permanent, and once the flight risk justification evaporates, the only special circumstance is the alien's removable status, which bears no relation to dangerousness. Moreover, the sole procedural protections here are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous, without (according to the Government) significant later judicial review. The Constitution may well preclude granting an administrative body unreviewable authority to make determinations implicating fundamental rights. See David at 690-692.

And further:

"In these cases, we must decide whether this post removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal. We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country

8

would present a very different question. See *infra,* at 693-694. Based on our conclusion that indefinite detention of aliens in the former category would raise serious constitutional concerns, we construe the statute to contain an implicit "reasonable time" limitation, the application of which is subject to federal-court review."

## A. An Individualized Bond Hearing is Required When Detention Becomes Unreasonably Prolonged.

31. "In *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), the Second Circuit answered that question, holding that 'a noncitizen's constitutional right to due process precludes ... unreasonably prolonged detention under section 1226(c) without a bond hearing."' *J.M.H. v. Freden*, No. 24-CV-875-LJV, 2025 WL 81919, at \*5 (W.D.N.Y. Jan. 13, 2025) (alteration in original) (quoting Black, 103 F.4th at 138). Further, it held that the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), "supplies the proper framework for determining when and what additional procedural protections are due such a detainee." Id. (quoting Black, 103 F.4th at 138). The *Mathews* factors require assessment of (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Black, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335). Applying these factors to a noncitizen held under section 1226(c), the Second Circuit held that: (1) the petitioner's private liberty interests were "'seriously affected'" by a seven-month detention, which it described as "'prolonged"'; (2) there 7 were "'very few'" procedures available to noncitizens detained under section

9

1226(c), which increased the risk of "'erroneous deprivation'" to the petitioner's "'private liberty interests'"; and (3) the government's valid interests in ensuring a noncitizen's appearance at removal proceedings and in protecting the community from dangerous noncitizens could be adequately addressed through "'additional procedural safeguards.'" *Foster v. Brophy*, No. 24-CV-6728-FPG, 2025 WL 833192, at \*1 (W.D.N.Y. Feb. 11, 2025) (quoting Black, 103 F.4th at 151-53). The Second Circuit concluded that the petitioner was entitled to an "individualized bond hearing by an [immigration judge]." *Black,* 103 F.4th at 155. The Second Circuit also directed that, at the bond hearing, the burden must be placed on the government to justify continued detention "by clear and convincing evidence" and, with respect to a detainee's risk of flight, that the immigration judge must "consider both [the detainee's] ability to pay and any alternatives to detention" that would assure his appearance. Id.

32. Petitioner's detention, without any individualized review, is unreasonable under the *Mathews v. Eldridge* due process test. Alternatively, Petitioner prevails under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020).

33. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. See *Jennings*, 138 S. Ct. at 860 (Breyer, J., dissenting) (observing that class members, numbering in the thousands, had been detained "on average one year" and some had been detained for several years). For noncitizens who have some criminal history, their immigration detention often dwarfs the time spent in criminal custody, if any. Id. ("between one-half and two-thirds of the class served [criminal] sentences less than six months").

34. Petitioner faces severe hardships while detained by ICE. Petitioner is held in a locked down facility, with limited freedom of movement and access to Petitioner's family or support network: "[T]he circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings,* 138 S. Ct. at 861 (Breyer, J., dissenting); accord *Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015); *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218, 1221 (11th Cir. 2016). "And in some cases the conditions of their confinement are inappropriately poor" including, for example, "invasive procedures, substandard care, and mistreatment, e.g., indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock down for sharing a cup of coffee with another detainee." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (citing Press Release, Off. of Inspector Gen., Dept. of Homeland Sec., DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities (Dec. 14, 2017)); *see also* Tom Dreisbach*, Government's own experts found 'barbaric' and 'negligent' conditions in ICE detention*, NPR (Aug. 16, 2023, 5:01 AM) (reporting on the "'negligent' medical care (including mental health care), 'unsafe and filthy' conditions, racist abuse of detainees, inappropriate pepper-spraying of mentally ill detainees and other problems that, in some cases, contributed to detainee deaths" contained in inspection reports prepared by experts from the Department of Homeland Security's Office for Civil Rights and Civil Liberties after examining detention facilities between 2017 and 2019). Individuals at Golden State Annex Detention Facility have described receiving food contaminated with insects (including cockroaches, flies, and spiders), hair, and other foreign objects. See California Collaborative for Immigrant Justice, Starving for Justice: The Denial of Proper

Nutrition in Immigration Detention, at p. 7 (April 2022), available at https://www.ccijustice.org/_files/ugd/733055_c43b1cbbdda341b894045940622a6dc3.pdf . At Mesa Verde Detention Facility, over 80% of detained individuals who responded to one survey said they had received expired food. Id.

35. The *Mathews test* for procedural due process claims balances: (1) the private interest threatened by governmental action; (2) the risk of erroneous deprivation of such interest and the value of additional or substitute safeguards; and (3) the government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Sho v. Current or Acting Field Off. Dir.*, No. 1:21-CV-01812 TLN AC, 2023 WL 4014649, at *3 (E.D. Cal. June 15, 2023), report and recommendation adopted, No. 1:21-CV-1812-TLN-AC, 2023 WL 4109421 (E.D. Cal. June 21, 2023) (applying Mathews factors to a habeas petitioner's due process claims and collecting cases doing the same). Here, each factor weighs in Petitioner's favor, requiring this Court to promptly hold a hearing to evaluate whether the government can justify their ongoing detention.

36. First, Petitioner indisputably has a weighty interest in their liberty, the core private interest at stake here. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment. . . lies at the heart of the liberty [the Due Process Clause] protects."). Petitioner, who is being held in "incarceration-like conditions," has an overwhelming interest here, regardless of the length of his immigration detention, because "any length of detention implicates the same" fundamental rights. *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020).

37. Second, Petitioner will suffer the erroneous risk of deprivation of their liberty without an individualized evidentiary hearing. The risk of erroneous deprivation of their liberty is

high, as he has been detained without any evaluation of whether the government can justify detention under their individualized circumstances. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf*, 634 F.3d at 1092. Conversely, "the probable value of additional procedural safeguards— an individualized evaluation of the justification for his detention—is high, because Respondents have provided virtually no procedural safeguards at all." *Jimenez v. Wolf,* No. 19-cv-07996-NC, 2020 WL 510347, *3 (N.D. Cal. Jan. 30, 2020) (granting habeas petition for person who had been detained for one year without a bond hearing).

38. Third, the government's interest is very low in continuing to detain Petitioner without providing any neutral review. See *Mathews*, 424 U.S. at 335. The specific interest at stake here is not the government's ability to continue to detain Petitioner, but rather the government's ability to continue to detain them for months on end without any individualized review. See *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022). The cost of providing an individualized inquiry is minimal. See *Henriquez*, 2022 WL 2132919, at *5. The government has repeatedly conceded this fact. See *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019); *Singh v. Barr,* 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019); *Marroquin Ambriz*, 420 F. Supp. 3d at 964.

## REQUEST FOR RELIEF

**WHEREFORE**, the Petitioner requests that this Court issue an immediate show cause order to the Respondents to bring the Petitioner to Court and show cause why he should not be immediately released on a reasonable bond.

Respectfully submitted,

**MICHAEL A. PIZZI, JR., ESQ.**
Florida Bar No 079545
6625 Miami Lakes Drive,  Suite 316
Miami Lakes, Florida 33014
Phone: (786) 594-3948
E-mail: mpizzi@pizzilaw.com

By:     */s/ Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that on April **21st, 2026,** *I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counselor parties who are not authorized to receive electronically Notices of Electronic Filing.*

By:     */s/ Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**

14