UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

LI XIANG JIANG A/K/A/ CHANG CHAUN LEE,

                    Petitioner,

          – against –

KENNETH GENALO, in his official capacity as Director, ICE New York Field Office; US DEPARTMENT OF HOMELAND SECURITY; and JEFFREY OESTERICHER,

               Respondents.

-------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

26-CV-2402 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On December 16, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained the petitioner when he reported for an interview at the United States Citizenship and Immigration Services ("USCIS") office about his pending application for relief.  (ECF No. 9-1 ¶ 21.)[1]  On December 19, 2025, the petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, and is still being held there.  (ECF No. 9-1 ¶ 22.)  He seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.  (ECF No. 1.)  For the reasons that follow, his petition is granted.

---

[1] The petitioner is also known as Chang Chaun Lee and Chaun-Lee Chang.

## I. Factual Background

### A. The Petitioner's Arrival to the United States

The petitioner, a long-time Staten Island resident, arrived in the United States from China in 1992. (ECF No. 9-1 ¶ 3.) According to the government, when the petitioner came to this country on September 12, 1992, he swore in a statement that he arrived by ship from Fuchow, China and wanted to go to New York to earn money and support his family. (*Id.* ¶ 3.) In a Notice to Applicant for Admission Detained, the government stated that the petitioner did not have valid immigration documents. (*Id.* ¶ 4.) The petitioner was detained from September 12, 1992 to October 5, 1992, and was released on bond. (*Id.* ¶ 5.)

### B. Initial Efforts to Remove the Petitioner

On April 25, 1993, the petitioner submitted a relief application, under the name Li Xiang Jiang, to the Immigration and Naturalization Service ("INS").[3] (*Id.* ¶ 8.) On October 22, 1993, INS requested a hearing, which was scheduled for January 13, 1994. (*Id.* ¶ 6; ECF No. 9-2.) Although the petitioner did not appear at the hearing, the immigration judge ordered that he be excluded from the United States under the name Chaun-Lee Chang. (ECF No. 9-1 ¶ 6.) The removal order became final 10 days later, on January 23, 1994. (*Id.*)

---

[2] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025). The Court has reviewed all the submissions, and finds that the petition "present[s] only issues of law," and may be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

[3] According to the government, the petitioner provided the English spelling of his name – Chaun-Lee Chang – when he arrived in the United States. (ECF No. 9-1 ¶ 3.) That name was used in immigration proceedings until April 26, 1993, when the petitioner used the Chinese spelling of his name – Li Xiang Jiang – in a relief application to INS. (*Id.* ¶ 8.)

On March 4, 1994, INS issued a Notice for Alien's Departure, and on July 21, 1994, the INS issued a Notice of Immigration Bond Breach. (*Id.* ¶ 7.) On March 31, 1999, an immigration judge granted the petitioner, under the name Li Xiang Jiang, voluntary departure, with an alternate order of removal if he did not leave the United States by August 31, 2009. (*Id.* ¶ 9.) That order became final on April 30, 1999. (*Id.*) The petitioner is therefore subject to two removal orders, in two different names.

The petitioner filed a petition for relief with USCIS on January 8, 2008, but did not respond when USCIS issued a Notice of Request for Information a year and a half later. (*Id.* ¶ 10.) On December 14, 2009, ICE detained the petitioner and released him on the same day, with an order of release under supervision ("OSUP") because of his pending application for relief. (*Id.* ¶ 11.) Four days later, USCIS denied the application for relief, and ICE cancelled the OSUP. (*Id.* ¶ 12.)

ICE detained the petitioner again from December 31, 2009 until April 1, 2010. (*Id.* ¶¶ 12, 18.) While he was detained, the petitioner had a telephone interview with the Consulate General of China stationed in the United States. (*Id.* ¶ 15.) ICE also submitted two travel document requests to the Consulate General of China and had additional communications with the Consulate General, but the Consulate General could not confirm the necessary information. (*Id.* ¶¶ 16, 17.)[4] On April 1, 2010, ICE released the petitioner on another OSUP. (ECF No. 13 ¶ 1(c).) The petitioner asserts, and the government does not deny, that the petitioner has never violated the terms of his OSUP. (*Id.*)

---

[4] ICE submitted another travel document request to the Consulate General on December 14, 2017, but did not receive a response. (ECF No. 9-1 ¶ 19.)

### C. Re-Detention

The petitioner filed another application for relief with USCIS on July 14, 2025. (ECF No. 9-1 ¶ 20.) After his son, a United States citizen, filed a sponsorship petition for the petitioner on July 10, 2025 (*see* ECF No. 1-2 at 165), the petitioner went to the USCIS office on December 16, 2025 for an interview about his application. (ECF No. 9-1 ¶¶ 20–21.) ICE arrested and detained the petitioner that day, pursuant to the removal orders from 1994 and 1999. (*Id.* ¶ 21.) The government denied the petitioner's application for relief on December 19, 2025, and transferred him on the same day to the MDC. (*Id.* ¶ 22.) The government asserts that the petitioner is detained there pursuant to 8 U.S.C. § 1231(a)(6). (*Id.* ¶ 22.)

On January 28, 2026, the government submitted yet another travel document request to representatives of the Chinese government in the U.S. (*Id.* ¶ 23.) ICE had not received a response as of April 27, 2026. (*Id.* ¶ 23.)

The petitioner has made four requests for release on humanitarian parole. (ECF No. 1-2 at 1, 36, 108, 193.) He has lived in Staten Island for more than 30 years. (ECF No. 1 ¶ 4.) He is employed at a restaurant, pays his taxes, and has no criminal record. (ECF No. 13 ¶ 12; *see also* ECF No. 13-1 at 10; ECF No. 13 at 193.) His two children are U.S. citizens and college graduates. (ECF No. 1-2 at 148–49.) The petitioner's wife is undergoing treatment for late-stage cancer, and the petitioner was caring for her. (*Id.* at 2.) Since his arrest, one of their children has postponed employment and is taking care of the petitioner's wife. (*Id.* at 146, 149–50.) In support of his petitions for humanitarian parole, the petitioner submitted letters of sponsorship from his family and community members, who describe him as a hardworking and devoted father and husband. (*Id.* at 148–55.) To date, ICE has denied the petitioner's requests for

release, citing his 1994 and 1999 removal orders and its own determination that the petitioner had not demonstrated that he would not be a flight risk if released.  (*Id.* at 196.)

## II.  Procedural History

The petitioner filed this petition on April 21, 2026 in the Southern District of New York.  (ECF No. 1.)  The parties agreed to transfer the petition to this district on April 22, 2026.  (ECF No. 6.)  The Court issued an Order to Show Cause the same day, directing the government to show cause why a writ of habeas corpus should not be issued.  (*ECF Order dated Apr. 22, 2026.*)[5]  On April 27, 2026, the government filed its opposition to the petition and response to the Court's Order to Show Cause (ECF No. 9), along with a declaration by Deportation Officer Crystal Harris (ECF No. 9-1) and other exhibits.  The petitioner replied on May 1, 2026.  (ECF No. 13.)

### LEGAL STANDARD

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

---

[5] The Court originally directed the government to show cause by 5:00 p.m. on April 24, 2026, but granted the government's request for an extension of time to reply.  (*ECF Orders dated Apr. 22, 2026 and Apr. 24, 2026.*)

**DISCUSSION**

In seeking a writ of habeas corpus, the petitioner alleges that the government violated his due process rights under the Fifth Amendment by detaining him for more than six months — over five months most recently, and for other periods including in 2009 and 2010.

## I. Statutory and Constitutional Framework

The detention of noncitizens subject to removal orders is governed by the Immigration and Nationality Act, 8 U.S.C. § 1231. "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory within this 90-day removal period. *Id.* § 1231(a)(2). After 90 days, if the government has not effectuated removal, the statute provides for supervised release of the noncitizen. *Id.* § 1231(a)(3). However, Section 1231(a)(6), which the government has invoked here,[6] permits the Attorney General to detain certain noncitizens beyond the removal period, including those determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, those who are inadmissible under Section 1182, and those found removable under certain subsections of Section 1227(a).

Although Section 1231(a) includes no temporal limit on the government's ability to detain certain classes of noncitizens beyond 90 days, the Supreme Court read in a limit to avoid

---

[6] The government claims that it is detaining the petitioner pursuant to Section 1231(a)(6), but has not explained its basis for that claim. It does not assert that the petitioner is a risk to the community or unlikely to comply with an order of removal. Nor has the government explained to what extent Section 1227(a) applies. And it has not argued that the petitioner is inadmissible under Section 1182. One of the government's exhibits (ECF No. 9-4 at 23), which appears to be a copy of an FBI form, cites Section 1182 but does not describe the reason for that citation or classification. (ECF No. 9-4 at 23). According to one of the petitioner's exhibits (ECF No. 1-2 at 196), ICE detained him because he failed to prove that he is not a flight risk; but the government does not press that argument in its submissions. Nor does it appear that the government could do so persuasively, because the evidence — including the petitioner's family and community ties, his employment history, home ownership, and lack of criminal history — points to the opposite conclusion. The Court assumes without deciding, for purposes of this petition, that the government is detaining the petitioner pursuant to Section 1231(a)(6).

the "serious constitutional problem" posed by indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Court concluded that the statute "includes an implicit limit on 'an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" *Senor v. Barr*, 401 F. Supp. 3d 420, 429 (W.D.N.Y. 2019) (quoting *Zadvydas*, 533 U.S. at 689).

"[F]or the sake of uniform administration in the federal courts," the Supreme Court set six months as a presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 701. A detainee can overcome this presumption before six months have passed if he can prove that continued detention is unreasonable. *See Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008); *Ndandu v. Noem*, No. 3:25-CV-02939, 2026 WL 25848, at *4 (S.D. Cal. Jan. 5, 2026). "After that [six-month] period elapses, an alien who 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future' must be released, unless the government can 'respond with evidence sufficient to rebut that showing.'" *Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 348 (S.D.N.Y. 2016) (quoting *Zadvydas*, 533 U.S. at 701). "[T]he presumption scheme [set forth in *Zadvydas*] merely suggests that the burden the detainee must carry within the first six months of postorder detention is a heavier one than after six months has elapsed." *Cesar v. Achim*, 542 F. Supp. at 903.

"*Zadvydas* thus 'articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 548–49 (2d Cir. 2009) (quoting *Wang v. Ashcroft*, 320 F.3d at 146).

## II. Violation of Substantive Due Process Rights

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects."

*Zadvydas v. Davis*, 533 U.S. at 690 (citation omitted). The Due Process Clause "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

ICE has detained the petitioner for more than five months, since December 16, 2025. (ECF No. 13 ¶ 1(a).) This period is "presumptively reasonable" under *Zadvydas*. Nevertheless, ICE's continued detention of the petitioner is unlawful for two independent reasons.

First, the presumption of reasonableness does not apply in this case, because the government has detained the petitioner before, most recently in 2009 and 2010 for three months (ECF No. 9-1 ¶¶ 12, 18). The government made efforts to remove the petitioner, but could not do so. It has now detained him for another five months, for a total of at least eight months, and has not established that the circumstances have changed so that it will be able to deport him. The government has not cited any cases permitting the government to restart the clock each time it fails to remove a noncitizen within six months. Courts have rejected government efforts to do so. *See Villanueva v. Tate*, 801 F. Supp. 3d 689, 702–03 (S.D. Tex. 2025) ("The government's contention that it may avoid the holding of *Zadvydas* and re-start the six-month presumptively constitutional detention clock by simply releasing and then re-detaining a noncitizen has no basis in either the statutes, the regulations, or *Zadvydas* itself."); *Bailey v. Lynch*, No. 16-CV-2600, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016); *Nguyen v. Scott*, No. 25-CV-01398, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. Aug. 21, 2025); *Sied v. Nielsen*, No. 17-CV-06785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen v. Holder*, No. 14-CV-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). Without the benefit of the presumption of reasonableness, the petitioner's continued detention beyond six months is clearly unreasonable and violates the principles in *Zadvydas*.

The continued detention is unlawful for a separate reason: the petitioner's removal from the United States is not reasonably foreseeable. The INA generally contemplates removal within 90 days of a removal order. 8 U.S.C. 1231(a)(1)(A). "The Supreme Court has held that continued detention beyond the 90-day removal period must be limited to 'a period reasonably necessary to bring about that alien's removal.'" *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 498 (S.D.N.Y. 2009) (quoting *Zadvydas*, 533 U.S. at 689). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. The petitioner can rebut the presumptive reasonableness of detention for less than six months by showing that the petitioner's removal is not reasonably foreseeable. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025). That showing is easier to make when the government has had many years to make arrangements to remove the noncitizen but failed to do so. *See Zavvar v. Scott*, No. 25-CV-2104, 2025 WL 2592543, at *4–5 (D. Md. Sept. 8, 2025) (government had 17 years to make arrangements for removal).

More than 30 years have elapsed since the petitioner's first removal period expired.[7] The government had the opportunity to remove the petitioner in 1994, when the first removal order

---

[7] Courts in this circuit have found that the six-month detention clock begins running when the removal order becomes administratively final. *See Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499 (S.D.N.Y. 2009); *see also Guangzu Zheng v. Decker*, No. 14-CV-4663, 2014 WL 7190993, at *8 (S.D.N.Y. Dec. 12, 2014) ("Under the language of the statute, the removal period begins as soon as an order of removal becomes administratively final. At that precise moment, ignoring what may or may not eventually transpire, 8 U.S.C. § 1231(a) is triggered, governing the alien's detention along with the statute's *Zadvydas*-grounded constitutional gloss." (citing 8 U.S.C. § 1231(a)(1)(B)(i))), *aff'd*, 618 F. App'x 26 (2d Cir. 2015). Under that approach, the latest-in-time six-month detention period would have expired on October 30, 1999, and the current detention period would be egregiously unconstitutional. The Court does not address that approach here, because the result would be the same whether the detention clock began in 1994 (when the first removal order became final), 1999 (when the second removal order became final), 2009 (when the petitioner's last detention began), or 2025 (when the petitioner's current detention began).

became administratively final.  (ECF No. 9-1 ¶ 6.)  It had the opportunity to remove him in 1999, when the second removal order became administratively final.  (*Id.* ¶ 9.)  Indeed, the government has had 27 years since the second removal order became final to remove the petitioner from the United States.  In apparent furtherance of that effort, the government submitted two requests for travel documents to China in 2010, one in 2017, and another in 2026.  (*Id.* ¶¶ 16, 19, 23.)  China has not provided the necessary travel documents.  The government has not given the Court any reason to conclude China will do so now.

The government's outstanding requests for travel documents from China do not justify continued detention of the petitioner.  *Ahmed v. Freden*, 744 F. Supp. 3d 259, 267 (W.D.N.Y. 2024) ("DHS's active efforts to obtain travel documents from Pakistan are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued."); *see also Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) ("Diligent efforts alone will not support continued detention.").  The petitioner's removal is therefore not reasonably foreseeable and is unauthorized by statute.

"Under *Zadvydas*, . . . detention of an alien 'once removal is no longer reasonably foreseeable' not only violates [8 U.S.C. § 1231], it also violates the Due Process Clause."  *Wang v. Ashcroft*, 320 F.3d at 146.  The Court finds that, because removal of the petitioner — 32 years after he first became subject to a removal order — is no longer reasonably foreseeable, the government's continued detention of the petitioner is unauthorized by statute and violates his due process rights.

## III.    Scope of Relief

"Upon finding a constitutional violation, a district court 'may' grant a writ of habeas corpus and 'dispose of the matter as law and justice so require.'"  *Rodriguez-Acurio v.*

*Almodovar*, 811 F. Supp. 3d 274, 319 (E.D.N.Y. 2025) (quoting 28 U.S.C. §§ 2241(a), 2243), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026).  The "typical remedy" for "unlawful executive detention" is "of course, release."  *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). When continued detention violates a petitioner's substantive due process right to be free from civil detention, "[o]nly immediate release [can] abate the constitutional harm."  *Patin v. Trump*, No. 26-CV-71, 2026 WL 783664, at *5 (D. Vt. Mar. 17, 2026).  The Court therefore determines that immediate release is the only appropriate relief.

"[D]ispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both release and narrow injunctive relief guarding against re-detention in violation of this Court's determination that the petitioner's removal is not reasonably foreseeable.  *See Hernandez Lazo v. Noem*, 818 F. Supp. 3d 328, 349 (E.D.N.Y. 2026); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 391 (E.D.N.Y. 2026); *see also Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediately release him and enjoin the Government from further similar transgressions" against him.).

**CONCLUSION**

For these reasons, the petitioner's detention violates the Due Process Clause of the Fifth Amendment, and his petition for a writ of habeas corpus is granted.  The government is directed to release the petitioner from custody immediately and within 24 hours of this Order.  The

11

government is further directed to certify compliance with the Court's Order by filing a letter on the docket within 48 hours of this Order.

The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing, by clear and convincing evidence, a change in relevant circumstances, including that removal of the petitioner is reasonably foreseeable due to the procurement of necessary travel documents.

Should the petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
May 20, 2026